UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 21-116 (DWF/ECW) |
| Plaintiff, | |
| v. | ORDER ADOPTING REPORT AND RECOMMENDATION |
| Gaspar Grajeda-Sanchez, | |
| Defendant. | |

## INTRODUCTION

Defendant Gaspar Grajeda-Sanchez moves to suppress evidence obtained as a result of a search and seizure (Doc. No. 28) and statements that he made while seated in the back of a trooper's squad car before he was read his *Miranda* rights (Doc. No. 49). In a Report and Recommendation ("R&R"), Magistrate Judge Elizabeth C. Wright recommended that Grajeda-Sanchez's motion to suppress evidence be denied and his request to suppress statements be denied as moot. (Doc. No. 54.) Grajeda-Sanchez filed an objection to the R&R (Doc. No. 58), and the United States of America (the "Government") responded (Doc. No. 61). After an independent review of the record and objection, the Court adopts the Magistrate Judge's R&R in its entirety.

## DISCUSSION

The Court has conducted a *de novo* review of the record, including a review of the arguments and submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b). The relevant factual and procedural background for the above-entitled

matter is clearly and precisely set forth in the Magistrate Judge's R&R and is incorporated by reference.

In the R&R, the Magistrate Judge concluded that Trooper Mills's observations during the traffic stop provided reasonable suspicion of narcotic trafficking to extend the stop. Moreover, the troopers' observations prior to the canine search and the positive canine sniff each independently provided probable cause for subsequent searches. Lastly, the Magistrate Judge concluded that Grajeda-Sanchez consented to the searches.

Grajeda-Sanchez objects to the R&R. He argues that (1) Trooper Mills unlawfully extended the duration and scope of the traffic stop by engaging in non-traffic-law-related investigative activities; and (2) the searches following the initial stop cannot be justified under exceptions to the Fourth Amendment. The Government argues that Grajeda-Sanchez's objections should be denied as the troopers' reasonable suspicion of criminal activity allowed them to extend the scope and duration of the stop. Moreover, the Government asserts that troopers had probable cause to search the vehicle and Grajeda-Sanchez consented to the searches. The Court responds to each objection in turn.

The Fourth Amendment protects people from "unreasonable searches and seizures." U.S. Const. amend. IV. The temporary seizure of a person through a traffic stop does not violate the Constitution. *See Terry v. Ohio*, 392 U.S. 1, 27-29 (1968). The protections under the Fourth Amendment are "satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted). Courts look at the "totality of the circumstances" surrounding a seizure to determine whether an officer has

"a particularized and objective basis" in supporting a reasonable suspicion of criminal activity. *Id.* (internal quotations omitted). In assessing the totality of the circumstances, courts "must view the individual elements [of suspicion] . . . in light of one another[] and give due weight to the officer's inferences when assessing the overall level of suspicion." *United States v. Sanchez*, 955 F.3d 669, 675 (8th Cir. 2020) (internal quotations omitted). The officer, relying on their own experience and training, "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

While on patrol at 6:30 a.m. on February 8, 2021, Trooper Mills observed a truck slow down and cross over the line onto the right shoulder when passing him. Trooper Mills noted several features of the truck that stood out to him: a fleet number without a corresponding US DOT number; no company decals or commercial markings; and the truck appeared new and clean. The general structure of the truck also suggested commercial activity: a utility-type topper with a ladder rack and double doors. The truck was registered to a private party, which Trooper Mills concluded was odd in conjunction with a fleet number. After observing the truck moving at an unusually slow rate of speed, Trooper Mills also noticed frosted windows, in violation of Minnesota law, and initiated a stop. Grajeda-Sanchez was the driver of the truck.

During Trooper Mills's initial approach and conversation with Grajeda-Sanchez, which lasted three to four minutes, Grajeda-Sanchez hesitated before he told Trooper Mills that he did cable work for AT&T and that he was coming from Sioux Falls. Trooper Mills's observations led him to believe that may not be the case. Namely,

3

Trooper Mills observed two traffic cones next to the rear windows; an empty truck bed; brand new reflective traffic safety vests on three of the seats; two short-sleeved polo shirts hanging directly in front of the driver's side and passenger side rear windows, which seemed out of place given the winter weather; no paperwork or receipts; a single box of cable; a cooler; a bag and box of tools; a bag of new orange rags; a strong odor of what seemed like laundry detergent; and some air fresheners. There were no winter clothes that Trooper Mills could see. These observations, coupled with Trooper Mills's initial observations before he pulled Grajeda-Sanchez over, suggested to him that Grajeda-Sanchez's truck was staged to appear like a commercial vehicle, and that he was trafficking narcotics. Moreover, Grajeda-Sanchez's eyes were bloodshot and glassy, which made Trooper Mills think he had been driving much further than from Sioux Falls. Trooper Mills then ran Grajeda-Sanchez's driver's license and had dispatch check the El Paso Intelligence Center ("EPIC") for further information. Grajeda-Sanchez's objection is focused on the EPIC search and the fact that Trooper Mills asked Grajeda Sanchez what company he worked for and looked underneath the truck bed.

     Grajeda-Sanchez argues that *Rodriquez v. United States* prohibits police officers from extending a traffic stop "beyond the time reasonably required to complete the mission of issuing a warning ticket" and thus Trooper Mills unlawfully expanded the stop by requesting information from EPIC. 575 U.S. 348, 354-55 (2015) (cleaned up). An officer, however, may prolong an otherwise lawful traffic stop when that officer has "reasonable suspicion" of criminal activity separate from the stop itself. *Id.* at 357-58.

4

Thus, whether *Rodriguez* prohibits the search-and-seizure actions hinges on whether Trooper Mills formed an independent reasonable suspicion of criminal activity. *Id.*

As noted above, several details indicated to Trooper Mills that the truck was likely a staged commercial vehicle. The totality of the circumstances support Trooper Mills's reasonable suspicion of criminal activity because he was "able to point to specific and articulable facts" from the start of the stop to support a "rational inference[]" of narcotic trafficking. *Terry*, 392 U.S. at 21. Thus, Trooper Mills's EPIC search was appropriate, as was his question to Grajeda-Sanchez about Grajeda-Sanchez's job and his decision to look underneath the truck bed. Accordingly, the traffic stop was lawfully extended.

Grajeda-Sanchez also relies on the Ninth Circuit's decision in *United States v. Gorman* to argue that Trooper Mills unlawfully extended the traffic stop by initiating a "non-routine record check." 859 F.3d 706, 715 (9th Cir. 2017). The "non-routine record check" in *Gorman* was an EPIC request. *Id.* at 711. The officer in *Gorman* "claim[ed] to have found Gorman suspicious," but nothing the officer "discovered in his initial questioning of Gorman provided independent reasonable suspicion for the[] 'unrelated investigations'" after the traffic infraction. *Id.* at 715. In contrast, Trooper Mills had a reasonable and articulable suspicion of Grajeda-Sanchez's criminal activity—narcotic trafficking—before he ran the EPIC search and thus established the legal basis for extending the stop.

Additionally, Grajeda-Sanchez objects to the Magistrate Judge's conclusion that he consented to the searches because the consent was obtained through "a show of authority" when Trooper Ruppert arrived with his canine. The Eighth Circuit has held

5

that an encounter between a defendant and officer is not consensual "where a motorist submitted to a show of authority by an officer who made it evident from his use of language and conduct that the motorist would not be free to leave without first complying with the officer's demands." *United States v. Jones*, 269 F.3d 919, 926 (8th Cir. 2001).

This case is unlike *Jones*, where the officer asked the defendant if he could search his camper, and the defendant said "no." *Id.* The officer then ignored the defendant's response, "instead telling [him] that he was going to call in a canine narcotics unit to examine [the defendant]'s vehicle." *Id.* In this case, Grajeda-Sanchez affirmatively consented to each search. Moreover, there is no evidence that Grajeda-Sanchez knew that a canine unit had been called when he consented to the search. Trooper Mills testified that he told Trooper Ruppert "to just stand back by my vehicle because I didn't want both of us around him for the consent, just to make sure it's valid." (Doc. No. 43 at 59-60.) Thus, the canine unit was not used to compel Grajeda-Sanchez's consent. Nor did Trooper Mills tell Grajeda-Sanchez that the canine search would occur regardless of his consent.

Overall, Grajeda-Sanchez fails to present evidence in support of his assertion that his consent was obtained through a show of authority. Instead, the record shows that his interactions with the troopers were amicable, and he never once withdrew consent or suggested reluctance.

Lastly, the Court agrees with the R&R that, regardless of Grajeda-Sanchez's consent, the troopers had probable cause to search the vehicle. As the R&R notes, "[a]ll three troopers testified that Canine Rocco alerted" near the engine of the truck. (Doc.

6

No. 54 at 49.) Additionally, even before Canine Rocco performed the second sniff, the troopers had probable cause to search the truck, given the state of the truck, the presence of masking agents (bars of soap, air fresheners, and raw meat), the truck's registration to a private party and its lack of commercial logos or markings, Grajeda-Sanchez's two or three active drug investigations, and Grajeda-Sanchez's hesitation when asked certain questions about his work. (*See id.* at 50.) These observations gave the troopers probable cause to search the truck for evidence of drug trafficking.

The Court therefore overrules Grajeda-Sanchez's objections and adopts the R&R in its entirety. In addition, the Government has agreed to not offer the at-issue statements at trial, so the Court will deny Grajeda-Sanchez's request to suppress statements as moot.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Grajeda-Sanchez's objection (Doc. No. [58]) to Magistrate Judge Elizabeth C. Wright's April 27, 2023, Report and Recommendation is **OVERRULED**.

2. Magistrate Judge Elizabeth C. Wright's April 27, 2023, Report and Recommendation (Doc. No. [54]) is **ADOPTED**.

3. Grajeda-Sanchez's motion to suppress evidence obtained as a result of a search and seizure (Doc. No. [28]) is **DENIED**.

4.     Grajeda-Sanchez's request to suppress statements made while seated in the back of the trooper's squad car before he was read his *Miranda* rights is **DENIED AS MOOT**.

Dated:  July 10, 2023                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge